DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF WEST PALM BEACH,**
Appellant,

v.

**VITA LOUNGE, LLC,** a Florida limited liability company,
Appellee.

No. 4D2024-2576

[November 12, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Carolyn Bell, Judge; L.T. Case No. 502022CA007080XXXX.

Robert I. Chaskes, Gerald B. Cope, Jr., and Noelle P. Pankey of Akerman LLP, West Palm Beach, and Kimberly L. Rothenburg of City of West Palm Beach City Attorney's Office, West Palm Beach, for appellant.

F. Malcolm Cunningham, Jr., and Amy L. Fischer of The Cunningham Law Firm, P.A., West Palm Beach, for appellee.

LEVINE, J.

Our inquiry in this appeal is whether there is a binding contract between the parties. Appellee, Vita Lounge, LLC ("Vita"), sought attorney's fees based on the existence of a binding contract between Vita and appellant, Community Redevelopment Agency of the City of West Palm Beach ("CRA"). The CRA disputes the existence of a binding contract. We find that there was not a contract to base attorney's fees upon. Further, even if there was a binding contract, Vita relies on an indemnification clause that would not allow attorney's fees. Thus, we reverse the imposition of attorney's fees. Because we reverse Vita's entitlement to attorney's fees, the remaining two issues raised by the CRA on appeal are moot.[1]

---

[1] The two moot issues raised by the CRA are that the evidence presented by Vita did not support the application of a multiplier and that the fee award contains additional errors requiring reversal.

Facts

In 2022, the CRA issued a Request for Proposal ("RFP") to operate the Sunset Lounge, a historic building in West Palm Beach. The RFP stated that "[t]he CRA and Proposer will be contractually bound only if and when a written contract between the parties is executed by the appropriately authorized officials of the CRA and Proposer." The word "only" was emphasized in the RFP. The RFP also contained an indemnity provision:

> **21. Indemnification.** Proposer agrees to indemnify, defend, save and hold harmless the [CRA], the City of West Palm Beach and their officers, agents and employees, from any claim, demand, suit, loss, cost or expense for any damages that may be asserted, claimed or recovered against or from the CRA, City, their officials, agents, or employees by reason of any damage to property or personal injury, including death, and which damage, injury or death arises out of or is incidental to or in any way connected with Proposer's performance of the services or caused by or arising out of (a) any act, omission, default or negligence of Proposer in the provision of the services under the agreement; (b) property damage or personal injury, which damage, injury or death arises out of or is incidental to or in any way connected with Proposer's execution of services under the agreement; or (c) the violation of federal, state, county or municipal laws, ordinances or regulations by Proposer. This indemnification includes, but is not limited to, the performance of the agreement by Proposer or any act or omission of Proposer, its agents, servants, contractors, patrons, guests or invitees and includes any costs, attorneys' fees, expenses and liabilities incurred in the defense of any such claims or the investigation thereof.

Vita submitted a proposal in response to the RFP and was selected as the winning proposer. Vita was then notified that it had been disqualified from the Sunset Lounge RFP for violation of lobbying provisions in the RFP and Section 66-8 of the City of West Palm Beach Code of Ordinances. Vita filed a complaint against the CRA seeking declaratory and injunctive relief to invalidate Vita's disqualification.

The trial court entered final judgment in favor of Vita on its claim for declaratory relief against the CRA, finding that Vita's disqualification was not proper or lawful because the CRA "acted arbitrarily and capriciously in disqualifying Vita from the Sunset RFP." The final judgment noted that

2

the Sunset Lounge RFP "<u>award was not a final contract</u> but, rather, entitled Vita to engage in negotiations with the CRA to finalize an agreement to operate and manage the Sunset Lounge." (emphasis added). Vita's disqualification from the Sunset Lounge RFP was thus invalidated and the CRA was then required to negotiate in good faith for a contract in order to operate the Sunset Lounge.

Vita filed a motion for attorney's fees and costs based on the indemnity provision in the Sunset Lounge RFP and section 57.105(7), Florida Statutes (2022).[2] In opposition to Vita's motion, the CRA argued that the RFP was not a contract and that the RFP specifically stated that the CRA and the proposer would be bound only if a written contract was executed. The CRA also argued that the indemnity provision did not provide a basis for Vita to seek attorney's fees.

The trial court found that Vita was entitled to fees because a contract had been established between Vita and the CRA. The trial court found that the original RFP was not an offer. Rather, the trial court determined that Vita's proposal in response to the RFP was the offer to the CRA, and "when the CRA voted to award the RFP to Vita, that was the CRA's acceptance."

The trial court then held a fee hearing. Central to this hearing was whether Vita's counsel was entitled to a contingency fee multiplier. The trial court eventually decided that Vita's counsel was entitled to a contingency fee multiplier of 2.0. Vita was awarded a total of $1,194,924.93 in attorney's fees. This appeal follows.

<u>Analysis</u>

The CRA argues that the trial court erred by determining that Vita was entitled to attorney's fees because there is no enforceable contract between Vita and the CRA and, even if a contract did exist, the indemnification provision is not a basis to award fees. We review de novo the entitlement to attorney's fees based on a contractual provision and the application of section 57.105(7). *Deutsche Bank v. Quintela*, 268 So. 3d 156, 158 (Fla. 4th DCA 2019). "Section 57.105(7), Florida Statutes, operates to make a

---

[2] Vita also moved for attorney's fees pursuant to section 57.112(2), Florida Statutes (2022), which allows fees in actions filed to challenge the adoption or enforcement of local ordinances that are expressly preempted by the state constitution or state law, and pursuant to 42 U.S.C. §§ 1983 and 1988, which provide for fees when a party prevails on certain constitutional challenges. The trial court denied Vita's motion for fees on both grounds.

unilateral attorney's fees provision in a [] contract reciprocal." *Grosso v. HSBC Bank USA, N.A. as Tr. of ACE Sec. Corp.*, 275 So. 3d 642, 644 (Fla. 4th DCA 2019).

"The question of whether the parties intended to form a binding contract is determined by examining the language of the document in question and the surrounding circumstances." *Midtown Realty, Inc. v. Hussain*, 712 So. 2d 1249, 1251-52 (Fla. 3d DCA 1998). "[I]f the parties prescribe terms to effectuate a binding agreement, such terms are controlling." *Triton Stone Holdings, L.L.C. v. Magna Bus., L.L.C.*, 308 So. 3d 1002, 1007 (Fla. 4th DCA 2020). Thus, case law is clear that "[w]here the parties intend that there will be no binding contract until the negotiations are reduced to a formal writing, there is no contract until that time." *Id.*; *see also Hous. Auth. of City of Fort Pierce v. Foster*, 237 So. 2d 569, 571 (Fla. 4th DCA 1970); *Club Eden Roc, Inc. v. Tripmasters, Inc.*, 471 So. 2d 1322, 1324 (Fla. 3d DCA 1985).

The RFP specifically stated that "[t]he CRA and Proposer will be contractually bound only if and when a written contract between the parties is executed by the appropriately authorized officials of the CRA and Proposer." Based on the plain language of the RFP, neither party was bound, nor was there a binding contract, until a written agreement was executed. *See Konsulian v. Busey Bank, N.A.*, 61 So. 3d 1283, 1285 (Fla. 2d DCA 2011) ("Under Florida law, contracts are construed in accordance with their plain language, as bargained for by the parties."). Therefore, we find the trial court erred in awarding attorney's fees based on a contract that was not written or agreed to. Because the parties intended to be bound only when the negotiations were reduced to a formal writing, and a formal writing was never executed, there was no contractual basis to support an award of fees under section 57.105(7). Rather, the CRA's selection of Vita was "nothing more than an 'agreement to agree,'" which is not enforceable. *Midtown Realty*, 712 So. 2d at 1252 (finding that a letter of intent to purchase a property was not an enforceable contract because it stated that "a more detailed and formal Purchase Agreement" would be presented).

The CRA's selection of Vita did not create a contract between the parties. "A request for proposal is used, for example, when the municipality is unable to define the scope of work required completely, or when responses may require subsequent negotiation. As a result, *a contract is not typically formed until after the negotiation process.*" *City of Cocoa v. Villas of Cocoa Vill., LLC*, 343 So. 3d 122, 124 (Fla. 5th DCA 2022) (emphasis added) (citations omitted). In the instant case, we find a

4

contract was not formed by the CRA's selection of Vita, which required further action to create a contract between the parties.

The case of *City of Cocoa* is instructive. The City of Cocoa issued an RFP inviting interested parties to submit a proposal to develop real estate the city had acquired. *Id.* at 123. The RFP explained that the winning proposal would be required to enter into a binding development agreement with the city. *Id.* The appellee was selected as the winning proposer. *Id.* After nearly three years of negotiations, a final contract had not been executed. *Id.* The city moved to terminate negotiations with the appellee in order to issue a new RFP. *Id.* The appellee sued, seeking to enjoin the city "from issuing a new request for proposal or awarding a bid to anyone other than the [appellee]." *Id.*

The Fifth District held that there was no enforceable contract between the parties because the RFP "expressly stated that the City and the winning proposer would negotiate before forming any contract, and that the Cocoa City Council would then have to approve the contract." *Id.* at 124. The court reiterated that a contract, following a request for proposal, is not typically formed until after negotiation is completed. *Id.*; *see also PCA Life Ins. Co. v. Metro. Dade Cnty.*, 682 So. 2d 1102, 1103 (Fla. 3d DCA 1995) (holding that the appellant "did not become a party to a contract as a result of its initial selection as one with whom the county would attempt to negotiate a contract").

In this case, the CRA's selection of Vita did not create a contract between the parties. Thus, there was no enforceable contract for the trial court to award fees under. The RFP clearly contemplated that, for the parties to be contractually bound, the parties had to execute a written contract. Because a written contract was never executed, the parties were not contractually bound, and thus, the trial court erred in finding that Vita was entitled to attorney's fees.

We also find that, even if an enforceable contract existed, the provision relied on by Vita does not provide a basis to award attorney's fees to Vita. The provision relied upon is an indemnity clause, which does not extend to fees between the parties. The provision is clearly labeled as an indemnification clause, which is indicative of the provision's meaning. *See Leon v. Carollo*, 246 So. 3d 490, 494 (Fla. 3d DCA 2018) ("The title and headings are permissible indicators of meaning.") (citation omitted).

"Generally in Florida, indemnity provisions apply only to third-party claims." *MVW Mgmt., LLC v. Regalia Beach Devs. LLC*, 230 So. 3d 108, 112 (Fla. 3d DCA 2017). "Florida courts have held that indemnification

clauses . . . apply only to liability for claims brought by third parties, and not to suits between the contracting parties." *Int'l Fidelity Ins. Co. v. Americaribe-Moriarty JV*, 906 F. 3d 1329, 1337 (11th Cir. 2018). "[A] party to a contract cannot use an indemnity clause to shift attorney fees between the parties unless the language of the clause shows an intent to clearly and unambiguously shift the fees." *MVW Mgmt.*, 230 So. 3d at 113.

The indemnity provision in this case does not clearly and unambiguously state that it applies to attorney's fees for suits between the parties. In *International Fidelity*, the Eleventh Circuit, while applying Florida law, found that an indemnity provision did not extend to suits between the contracting parties. 906 F. 3d at 1338 (applying Florida law, specifically section 57.105(7), Florida Statutes). The indemnity provision in that contract stated: "To the fullest extent permitted by law, [CPM] shall indemnify and hold harmless [Americaribe] . . . from and against all claims, damage, los[s]es and expenses (including, but not limited to attorneys fees) arising out of, in connection with or resulting from the performance of Work under this Subcontract . . . ." *Id.* at 1332. The court determined that Florida law has "held that indemnification clauses similar to the one in this case apply only to liability for claims brought by third parties, and not to suits between the contracting parties." *Id.* at 1337. The provision in *International Fidelity* was "a general indemnity provision that by default under Florida law applies only to liability for third party claims," and the provision did "not on its face unambiguously state or clearly identify that Americaribe would be entitled to attorney's fees when either Americaribe or CPM was required to take action to enforce the subcontract." *Id.* at 1337-38. The court noted that, had the parties intended to depart from this default position, the parties could have expressly stated that the indemnity provision applied to suits between the contracting parties, or the parties could have included a prevailing party fee provision in the contract. *Id.* at 1338.

Similarly, in the instant case, even if there had been a binding contract, the indemnity provision in the RFP does not clearly or unambiguously state that it provides fees for disputes between the parties. The RFP could have included a prevailing party fee provision if it intended to cover fees for disputes between the parties. Thus, we find that even if there was a contract between the parties, which there was not, the trial court erred in

6

granting fees to Vita because the indemnification provision did not provide for fees between Vita and the CRA.[3,4]

In sum, the trial court erred in finding that Vita was entitled to an award of attorney's fees because there was no contract between Vita and the CRA, and the indemnification provision did not provide for an award of attorney's fees between the parties. Accordingly, we reverse the award of fees in favor of Vita and remand for the trial court to enter an amended order striking the fee award.

*Reversed and remanded with directions.*

CIKLIN and FORST, JJ., concur.

\* \* \*

**Not final until disposition of timely-filed motion for rehearing.**

---

[3] Vita argues in the alternative that this court can affirm its fee award because it was entitled to recover fees under the alternative theories rejected by the trial court: section 57.112(2) and 42 U.S.C. §§ 1983 and 1988. *See Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 645-46 (Fla. 1999) (holding that an appellate court may "affirm[] the trial court's ruling, even though the ruling may have been based on improper reasoning," when the trial court "still reached the right result"). Section 57.112(2) allows the recovery of fees by a prevailing party in an action against the local government to challenge the adoption or enforcement of a local or state ordinance on the grounds of preemption. Vita's complaint did not include any allegations of preemption. Thus, denying fees under this ground was proper. Similarly, 42 U.S.C. §§ 1983 and 1988 allow for fees for the prevailing party in an action for certain constitutional violations. We find that, since Vita did not prevail on a constitutional violation, Vita is not entitled to fees under 42 U.S.C. §§ 1983 and 1988. Thus, we find that the trial court did not err by denying fees under either basis.

[4] Vita also relies on collateral estoppel to assert that the CRA is barred from contesting that there is an enforceable contract because the CRA did not appeal the underlying final judgment which rejected the argument that no enforceable contract existed. This argument is unavailing because the underlying final judgment clearly determined that the award of the Sunset Lounge RFP "was not a final contract." Nothing in the underlying final judgment prevented the CRA from raising the issues argued in this appeal.

7